Good morning, Ms. Javed. Good morning. Good morning. May it please the Court, my name is Roma Javed and I represent the petitioner Omar Everton Dale. Your Honours, the case before you today is about why the petitioner Omar Dale should be a United States citizen. As the Third Circuit did in Teneo, by applying the scrutiny required by the Supreme Court's decision in Morales-Santana, the Court should find that the statute is unconstitutional as applied to Mr. Dale, and find that he derived citizenship through his father, as he would have if his mother and father were switched. The statute at issue in this case, 8 U.S.C. 1432A3, discriminates against unwed fathers based on outdated stereotypes, and does not serve an important government interest today, thus cannot require, thus cannot survive the required scrutiny under Morales-Santana. Today, we are asking this Court. Assuming we agree with your argument, does this panel have the power to make this change, give him prior precedent, or do we need to wait for embankment? Your Honour, when there is intervening Supreme Court precedent, like there is here with Morales-Santana. It's not exactly the same issue. I mean, there's a debate between you and your adversary as to how close or far it is, but it's certainly not exactly the same issue. Your Honour, we believe that this Court's prior ruling in Pierre 2013 cannot stand past Morales-Santana. First, as for the gender discrimination analysis in Pierre, it's unclear what scrutiny was applied to that analysis. So is that open? Is that ambiguous so that we can look at it and make a determination as to what scrutiny was applied in Pierre? Isn't that one of the things we have to do? Your Honour, it's unclear as to the gender analysis in Pierre what level of scrutiny was applied at all. I understand, but I'm asking you, can we make that determination? Yes, you can, Your Honour. All right. And if we think it does not diverge from Morales-Santana, that ends your argument, right? It would, Your Honour. Under the circumstances that Judge Rakoff just – It would, Your Honour. However, it's clear that Morales-Santana broke several important links or assumptions upon which Pierre was premised. It's odd, isn't it, that this Court decided Morales-Santana case, this Court was the Court of Appeals Court in that – and I guess it was just Loyer who wrote the opinion – and didn't distinguish Pierre. It reached – the decision reached without distinguishing the I didn't think that there was any kind of a problem between what Pierre held and what it – and that later the Supreme Court held that there was no – Your Honour, correct. They did not touch Pierre. However, we feel that Pierre, after Morales-Santana, must be revisited. So they just missed it? Your Honour, they did not look at it because there were – it was a different statute at issue in that case. The statute here today, 1432a3, is different than the one in Morales-Santana. However, the government interests underlying them are the same. And the scrutiny that's required by Morales-Santana, it's clear that the Respondent hasn't met their burden as applied to Mr. Dale, and it doesn't substantially advance an important government interest today. Can I ask you a hopelessly simple question, which you – well, I'll ask it. We're dealing with what we can refer to at least as the subsection 3 of the statute, right? So it permits – it covers legal separation of the parents. Well, they were never married, so that's not involved here. Or the naturalization of the mother, if the child was born out of the womb, is far so good, and the paternity of the child has not been established by legitimation. But here it was established by legitimation, wasn't it? Your Honour, there is an order of affiliation in that case, and that order of affiliation only serves to prove paternity. For Mr. Dale's father to legitimate him, the only way for him – So you're saying he was – He was not – Not legitimized. He was not, Your Honour. He was not legitimated. Mr. Dale's father was declared by his father by a family court order, and that's the order of affiliation at issue in this case. But that wasn't enough to legitimize him under the statute. But even if he had been, it wouldn't matter for your analysis. Under your analysis, you went either way, right? Because the statute is – assuming we have the power to reach this question, the statute is still blatantly favorable to one gender over another for no reason that can possibly survive strict scrutiny. Exactly. Let me ask a question which is as much a question as Judge Rakoff's question was a question. And that is – Minor question. It seems to me that were it the case that he was legitimated – that's the proper word – then you would have a peculiar situation under which the child received citizenship, derivative citizenship under neither the mother, because he was legitimated, nor the father, because that's not enough. So there would be – he would be equally unprotected. I'm not sure there would be an equal protection – it's a silly statute, but I'm not sure there would be an equal protection question, because under either he wouldn't be. But you have explained to me that that's not this case, because he was not legitimated. So we can move on from my simple question and go on to your more complicated one, I think. Correct, Your Honor. Under the statute, the actual relationship between Mr. Dale and his father was rendered completely irrelevant, because the statute presumed him conclusively unfit to transmit father. A similarly situated mother would not have faced such a roadblock. And the government interests purported to be upheld by this statute are simply not upheld post moralis santana, especially as applied to Mr. Dale. The statute purports to protect the alien parental rights. However, the statute is really only protecting the rights of the parent if that alien parent is the mother. As for the father, it disrespects those rights, and it falls in line with the stereotype that an alien parent does. And that view was looked upon very dimly by the court in moralis santana. The unwed father here has no means of bestowing citizenship, even if the mother is absent or otherwise uninvolved. Your view that we do indeed have to, however you use the term, overrule Pierre in order to reach the result that you say is required? Yes, Your Honor. And I would like to note for the court as well that Pierre, one of the underpinnings of Pierre was Catwell, a Third Circuit case that has now been overruled and is no longer good law under Teneil. Pierre was also premised on a variety of rational basis circuit cases, and Louis V. Gonzalez, which did not involve a constitutional issue. So when you apply the same level of scrutiny required by moralis santana, it's clear that the government has not met their burden here. What would meet the burden? Your Honor, if there was a way to legitimate Mr. Dale that did not require solely biological marriage to the biological mother, that would meet the requirement. Moralis santana left intact Wynne, and Wynne required clear and convincing evidence of — I see I'm out of time. May I continue, Your Honor? This may be a longer discussion than you think. Sure. Moralis santana left intact Wynne, and Wynne required that the father established by clear and convincing evidence that he was the father. This could have been done in a variety of ways, including mere acknowledgment, a court order. And that requirement would have easily been met in this case. However, requiring Mr. Dale's father to marry the biological mother of his child, when his biological mother had been deported already, and Mr. Dale was actually — Mr. Dale's father was married to someone else at the time he naturalized. The admin record at page 206 shows on his naturalization application that he was married to another woman at the time. So requiring him to divorce that wife, go perhaps to Jamaica to find his biological mother and marry her to bestow citizenship onto his child is a significantly onerous burden, and it's not covered under Wynne. What's our remedy here? The remedy, Your Honor, we're asking the court, in line with Congress's intent, to grant an extension, like the court in Teneo did, and find that Mr. Dale derived citizenship through his father, extending him the same treatment that the statute would have afforded his mother if his mom and dad would have been switched. It does not disrupt the statutory scheme, and nor does it disrupt Congress's intent here. We ask this court to find that the means and fit required by Morales-Santana was not sufficiently close when Mr. Dale's father was forever precluded from passing citizenship onto him without providing a practicable way for him to prove that an actual parent-child relationship existed between the two. Your Honor, I recognize that the Supreme Court in Morales-Santana chose nullification as the correct remedy. However, that's not correct here. The court does not have to find that the means and fit exists in every instance, just that it did not exist for Mr. Dale and Mr. Dale's father when the only avenue for him to legitimate him was through marriage to the biological mother. And the severability clause allows for the reading of such an extension. There was no other way to legitimate him, you say? There was no other way, Your Honor. For legitimation purposes, we look to the law of the father's domicile in residence or the child's, and that would be Jamaica and New York law, and the only way to legitimate him under both of those laws was through marriage to the biological mother. In Morales-Santana, if I recall correctly, the Second Circuit attempted to do what you're urging us to do here, but that was the one respect in which the Supreme Court reversed and said, no, you can't rewrite the statute. So why isn't there the same difficulty here? Your Honor, the court in Morales-Santana decided not to extend the remedy because they found that it would favor unwed couples over wed couples. That's not the scenario here. It is not disrupting the statutory scheme to find that Mr. Dale derives citizenship, as he would have if his mother had been the one to naturalize. Congress's intent could not have been to force people to marry. They had family unity in mind to ensure that parents and kids stay together. And imposing the legitimation requirement by which only Mr. Dale's father had to marry his mother violates his equal protection rights. Simply put, if it's the same. Sotomayor, it would for any other similarly situated couple with child? It would, Your Honor, for other similarly situated fathers. We hope we argue that that is the same. I know Dominican Republic has the same legitimation requirement. And the government did argue that in Teneo, the Third Circuit's decision, granting exactly the relief under a similar circumstance here, is distinguished because it was legally impossible for Teneo's father to legitimate the child because his mother was dead, hence the as-applied ruling. We argue, however, that the case is identical here because it was just as impossible. Mr. Dale's father was married to someone else at the time that he naturalized. And since polygamy is illegal in both the U.S. and Jamaica, it was just as impossible for him to legitimate him as it was for Teneo's father. Thank you. You've reserved two minutes. Okay. Thank you, Your Honor. Thank you. Ms. Byrd, why don't we start you with, yeah, we'll give you 12 minutes at least. You can keep on talking probably. All right. If you need to. You already learned the lesson as to what the red light really means, but go ahead. It's not like moot court, exactly. Please. May it please the Court, Sarah Byrd, on behalf of the Respondent, the Attorney General, the Court should deny the petition for review because the case is squarely controlled by the prior precedent in Pierre, and Pierre was not undermined or overruled. So let's just assume for the sake of argument that it's not controlled by Pierre. Okay. Isn't it on its face gender discriminatory? There is a gender differential on its face, but that differential is based on biological differences between women and men rather than on the type of stereotype or overbroad generalization that Morales-Santana found did not survive. What is the biological difference that you say justifies the gender difference in the statute? The Supreme Court in Nguyen and this Court in Morales-Santana and in Pierre have held that women legitimate the child at childbirth, whereas men simply don't give birth to children. So it's not they're not similarly situated at the moment of childbirth. At the moment of childbirth, as the Supreme Court held. Physiologically, there's a difference between being a Muslim. Right. So if you were to reverse it, it would read, The naturalization that a child derives citizenship upon the naturalization of the father if the child was born out of wedlock and the maternity of the child has not been established by childbirth. You're saying that this principle arises out of or is confirmed by Nguyen, if you can hear me, by Nguyen, and Nguyen was not overruled by Morales-Santana. That's right. This Court relied heavily on Nguyen in Pierre, found them very similar, and Nguyen was reaffirmed by Morales-Santana as a permissible distinction between women and men with regard to childbirth. Because as this Court said in Morales-Santana, when this Court found that statute to violate equal protection, it said, So we agree that unwed mothers and fathers are not similarly situated with respect to the two types of parent-child ties justifying the legitimation requirement at issue in Nguyen. I take it Morales-Santana was simply a matter of time within the United States. That's right. And the theory was that that is something which is not related to the physiological Right. The difference there was that it required men to spend a lot more time, 10 years, in the United States. But without any physiological reason for it. Right. The Court observed that there's no reason to think men need more time than women to assimilate citizenship-related values. I suppose some women might make a different argument, right? Right. But there's no argument to be made that men ever give birth to children. Right. So thank you for sharing that with us. So I'm not quite sure how this statute works. If the mother is naturalized and the paternity of the child has been established by legitimation, then the child does not qualify, if I understand. Why? That's correct. Because as the So it seems crazy, right? I mean, if the father doesn't legitimate you, you get to be a citizen. But if the father, gosh darn, actually acknowledges and goes through legitimation, you don't get citizenship. It would be crazy if this were the only way to obtain citizenship, but it's not. The purpose of this statute is to protect the rights of the alien parents. That's one of the purposes, anyway, and the main one. As this Court observed in Pierre and every other court to look at it has held that that is the substantial – that's the government interest at play. And so the father gets on equal footing with a mother and has his rights protected if he legitimates. But if he doesn't legitimate, then his legal rights are not protected to the same extent. I'm sorry. I thought that your adversary was saying that a father alone cannot legitimate under American law. I disagree. All right. I can cite several cases for that. First, it's important to note. By the way, if I have misstated what I thought she said, that she will correct me. Okay. Right. So it's important to note the Board's definition of legitimation for purposes of this statute is an act putting a child born out of wedlock in the same legal position as a child born in wedlock. So in New York law, that is accomplished by an order of affiliation. And there are several cases saying so. There's a case from Family Court in 1983, Terese C. v. Berry C. It says, under New York law, an order of affiliation gave legal rights with respect to custody, visitation, adoption, inheritance rights. Would your position be that, therefore, since legitimation is possible, they're both being treated equally, perhaps absurdly, but they're both being treated the same, because in either case, they cannot automatically transmit citizenship? Transmit citizenship. Yes. If a child is legitimated, and the Eleventh Circuit held this after Morales-Santana and Levy, I guess, if a child is legitimated, there's not even a gender distinction. So I want to point out that sometimes New York courts will say you can only — a child is only legitimate if the parents were married, but that's based on just the kind of plain language definition of legitimacy as a child born to married parents. So obviously, the only way to meet that plain language definition is to be born to married parents or have your parents married afterwards. But New York law in the 1980s, which is the relevant period here, here the New York order of affiliation was in 1989, held that a child who was the subject to an order of affiliation had all the same legal rights under State law. So — and that extended beyond just child support to inheritance and all those others. In fact, in an unpublished board decision, Board of Immigration Appeals in 2003, this is matter of Marin, a 2003 unpublished board decision, the board held that the person in this case appeared to have been legitimated pursuant to an order of — an acknowledgment of paternity executed approximately the exact same dates. That one, it was 1989. And yeah, here it's 1989 as well. Paternity acknowledgment was enough. The precise person, this human being that we're talking about here — Yes. — has been legitimated. Yes. Or at least — That's what he argued below. And based on my reading of New York law and the board's definition of legitimation, yes, the order of affiliation gave him the same legal rights as a child born in wedlock. Neither parent — it still strikes me as strange, but what you're saying is neither parent could have given derivative citizenship — Automatically. — to the child, and therefore, they were being treated the same, however foolishly it may have been. That's right. But there was another way. It wouldn't be automatic. And the purpose of that was to protect — Not be automatic, you said? Upon the — I just didn't hear you. Yes. It would not be automatic. Instead, they would have to affirmatively apply. And that would be under section former — Either the mother or the father would have to — Right. But that's 8 U.S.C. 1433, the 1990s version, allowed a parent who naturalized or became a citizen by naturalization to apply. And it's not discretionary. The attorney general shall issue a certificate of citizenship. But to apply, that parent had to have legal custody. But they're treated — what you're saying, which in terms of equal protection matter, you're saying both are treated the same for purposes that you're now speaking to? If the child is legitimated, yes. They're both treated the same. Now, to be fair, the definition of child in section 101, with all the definitions, also requires legitimation in order for the person to — but that, again, goes back to what the Court upheld in Nguyen, saying that men and — mothers legitimate at childbirth, whereas fathers may not be aware of the birth of a child and therefore have to take a formal legal step to get their parental rights on the same footing. That has been upheld by the Supreme Court and by this Court. And — I'm still — maybe I'm not following totally your argument. The — if I understand the statute, a mother of a child born out of wedlock can always get her child citizenship by the act of naturalization unless paternity has been established by legitimation. But a father can never do that. Because maternity has always been established by legitimation. As this Court has said, and the Supreme Court has said, the woman legitimates the child at childbirth. But — so the mothers are getting an automatic right that the fathers are not. By virtue of giving birth to the child physically. I don't — it seems to me a non sequitur. What does one have to do with the other? I understand that the birth of the child is a — Legitimate. — factor in legitimation. Yes. But the requirement here is naturalization. Right. And if the father has legitimated the child, which the mother has already done because the child was born, then the father is equal — on equal footing. His parental rights are protected. Where is it? Where is it? Where is it? Maybe it's another statute. Where does he get — if he has legitimated the child, where does this statute say, okay, at this — at that point, he's on equal footing with the mother? Because at that point, the mother could not automatically transmit citizenship. Remember that the primary goal of the statute is to protect the rights of the alien parent from automatic citizenship. The argument you just gave me, if I understand it, is you're both screwed if the father — Not if you look at it from the perspective of an alien parent who may not want — But under circumstances like this, that's why I was referring to it as being rather peculiar. But because the statute speaks in terms of not legitimized or legitimated, isn't the — isn't it true that father by legitimating means that neither of them can? Can automatically transmit citizenship. Which is a little strange that by the father's legitimating, it puts the child in a disadvantageous position, but doesn't it? Because otherwise, the mother could just do it and be a citizen. I don't think it's disadvantaged as compared to the rest of the statute. Because the rest of the statute, the general rule is to require both parents to naturalize. And then the rest of the statute says, except if one child is — I mean, one parent is deceased, which was the issue in Tenu, the Third Circuit case, or if one parent has legal custody and there's been a legal separation, the whole tenure of the statute is to say both parents must naturalize for it to be just automatic, unless there's a circumstance where the rights of the alien parent are somewhat lower than the rights of the naturalizing parent. And in that case, it can be automatic. So the general rule set forth by the statute is that it has to be both parents. And then there's another statute that, as I mentioned, allows for a pun application rather than just automatically. And this Court observed that that does protect the rights of an alien parent. In Lewis, this Court discussed that, where citizenship, being just automatic, could have big implications for the child's other citizenship. This child was born in another country, has another citizenship. That alien parent could totally lose contact with the child or could have implications for military service, taxation, all sorts of implications. So instead of making it automatic, the Court — I mean, the Congress said only if both parents naturalize or if there are these circumstances where one of the parents, the alien parent, has less legal entitlement to parental rights. And that's why the legitimation requirement makes sense, because then if the father has taken the step to legitimate and is the one not naturalizing, then the mother can't just automatically transmit citizenship because the father is legitimated and his rights are protected. But there's still a process by which a parent with legal custody can transmit  In this case — Sotomayor, that's — once the application is made, that's automatic. It is. By the way, all the things you've just said as to the purpose of the statute and all like that, is there legislative history that says that or is that just inferences? I believe that that is primarily an inference from the face of the statute. But that's what this Court held in Pierre. That's what every court to look at this statute has held. And the courts have said that the legislative history as to this particular provision is just scarce. So they've looked at it and seen that it was changed. The Supreme Court said the same thing. I don't believe — no, I don't think the Supreme Court has addressed this precise statute. This Court addressed it in Pierre. And also significantly in Gonzales-Reyes, an unpublished decision, a panel of this Court addressed this exact argument and held that Morales-Santana did not. We'd like to spend the whole rest of the day here. We can discuss the import of summary orders. But we know the case, the order has been brought to our attention. Well, that panel said Morales-Santana addressed a different statute and this panel cannot depart from our prior decision in Pierre. Just briefly, Pierre did apply intermediate scrutiny. The panel there specifically said that gender distinctions get intermediate scrutiny. And then it noted that rational basis can apply in the visa context, but then said we don't even need to go there because here the statute survives intermediate scrutiny with regard to both the legitimacy challenge that was present there and the gender challenge. And that's binding on us. And that's binding, yes, and was not undermined at all by Morales-Santana. As you pointed out, this circuit, in issuing — reaching the same conclusion as the Supreme Court in Morales-Santana, didn't see any need to distinguish or overrule Pierre. Do you think that the panel in the Second Circuit Morales-Santana case was ever presented with the argument that Pierre has any relevance to their decision? I think you would know better than I would. But the panel was presented — clearly was presented and addressed Nguyen, which had to do with the legitimation requirement. And Nguyen is the underpinning for Pierre. So I don't know whether Pierre was specifically raised, but it — Thank you. The record will reflect the answer. Thank you, Ms. Berg. Thank you. Ms. Javid, you've reserved two minutes for rebuttal. Yes, please, Your Honor. I'll be brief. Your Honor, Morales-Santana held that the statute must serve an important government interest today. The statute does not require the mother to marry the father. It only requires the father to marry the mother to legitimate the child. The statute — What's the difference? Your Honor, the father is — You can't do one without the other, can you? No, you can't, Your Honor. However, it's imposing a burden on the father that's not there for the mother. And the statute is really just promoting marriage. In 2019, marriage is not an institution as commonly subscribed to as it once was. The strict view of family underlying the statute doesn't account for today's family structures, same-sex marriages, married couples that live apart. And we can't assume today that a woman that gives birth to a child is the biological mother. Surrogacy is much more common today. Morales-Santana looked down on the view that unwed fathers care little about their children. And the government cannot have an interest in discriminating against unwed fathers because that would be against Morales-Santana's Supreme Court precedent. Surrogacy sounds interesting. I mean, how would that affect a mother — a biological mother, that is to say a mother who gives physical birth to a child, right? That's not surrogacy, right? I mean, even if — that's not what we would consider surrogacy, even if there was a sperm donor that was unknown. The birth itself would not be considered surrogacy. I'm just trying to get the words right. I'm describing a situation, Your Honor, where a woman would carry a child where neither the egg nor the sperm is hers. And in that case, the government here would conclude that the mother has inherently legitimated the child. That's not true today. And Morales-Santana states very clearly the statute must serve an important government interest today. As for legitimation, I would point the Court to Hines, again, saying clearly that the only way for a Jamaican national to legitimate his child is through marriage to the biological mother. And, Your Honors, it's clear that at the time the statute was drafted, they discriminated against fathers based on stereotypes. They did not account for a scenario where an unwed father would be raising his child without the mother unless the mother was dead. And simply put, Your Honors, if his father was his mother and his mother was his father, he would be a citizen today. I urge the Court to find that Mr. Dale — I'm not saying it's not true, but run through — what would happen if that — if there was that reversal? Why do you say the child would be a citizen? I'm not — I'm not disagreeing with you. Just run through the steps. Sure, Your Honor. If his mother had legitimated him, he would have been — if his mother had been the one to naturalize instead of his father and the rest of the facts were exactly the same, he would be a citizen today. But the father — but he wouldn't be if the father had been legitimated, which we're told he was. Correct, Your Honor. He would not. I urge the Court to find that Mr. Dale was deprived of equal protection and his father was deprived of equal protection and find that he became a citizen in 1988 when his father naturalized. Thank you, Ms. Baird. Thank you. Thank you both, Ms. Baird and Ms. Gallagher. Well argued. We will reserve decision in this case.